Effie Baker, Appellant, v. Harold Thompson, Appellee.

Gen. No. 10,308.

Opinion filed April 21, 1949. Released for publication May 23, 1949.

ANDREWS & ANDREWS, of Kewanee, and CARL A. MELIN, of Cambridge, for appellant.

SINNETT & BRITTON, and BERNARD J. MORAN, both of Rock Island, R. SHERIDAN WELCH, VERA M. BINKS and THOMAS J. WELCH, all of Kewanee, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

Effie Baker brought suit in the circuit court of Henry county asking damages of Harold Thompson as a result of his allegedly negligent operation of his automobile whereby plaintiff was seriously injured on the night of March 28, 1944. The complaint filed charged that the defendant was guilty of common law negligence; that he violated the statute which commands a driver of a vehicle approaching a pedestrian upon a roadway to give warning by sounding the horn and to exercise proper caution; that he violated the statute which pro-

vides that an operator of a vehicle shall do so at a speed that is reasonable and proper; and that he did not have lighted lamps on his automobile that were visible for at least five hundred feet in the direction toward which he was driving. There was also a wanton and wilful count which was stricken by the trial court.

On December 19, 1947, after a trial of this cause, the jury returned a verdict finding the defendant not guilty. The court, after overruling plaintiff's motion for new trial, entered judgment upon the verdict in bar of action and for costs. This appeal ensued.

The plaintiff, who was a woman about fifty two years of age, was a passenger on a bus traveling upon State Highway No. 150 at about 9:00 p. m. on the night of March 28, 1944. Her destination was the residence of Maurice Hallene which was located on the south side of the road about four miles southeast of Coal City, Illinois. It was cold and very dark, and a wet snow was falling. In front of the Hallene home the bus stopped and permitted the plaintiff to alight on the north side of the highway, and in crossing the same and entering the driveway of the Hallene home she was struck by defendant automobile and very seriously injured.

The plaintiff testified that after she got off the bus, it turned off the lights within and started on its way to Rock Island; that she then looked in both directions and saw nothing coming; and that when she had already crossed the pavement and upon the south shoulder, she was struck. The defendant's automobile, although using every effort to stop, proceeded down the highway for a distance of more than one hundred feet, winding up in a ditch and against a culvert.

The defendant contends that he was driving his car at a speed not to exceed twenty five or thirty miles per hour; that he did not see plaintiff until she was about thirty feet away from him when a dark object loomed up within his vision; and that he then applied his

brakes and turned to his right, striking her with the left side of his front bumper. He further testified that he saw the bus when it was about four hundred feet away from him. The defendant contends that plaintiff was on the highway when she was struck. The testimony is undisputed that plaintiff was upon the south shoulder after the accident.

The story of the plaintiff that she looked both ways and saw no approaching vehicles seems quite plausible. It was a dark wintry night, a heavy, dense, wet snow was falling, and the defendant was driving with his dimmer lights. The defendant saw the bus four hundred feet away. By the exercise of the least amount of care he should have known that it was stopping to discharge passengers, and that under the circumstances such a passenger might not see the approach of his car. It was defendant's duty to operate his car at such a speed and in such a manner so that plaintiff would not be injured. Instead, he was driving at such a speed that it required him one hundred feet to bring his automobile to a complete stop, and then it required the assistance of a culvert.

The foregoing factual situation certainly presents an issue where the jury could have very reasonably and properly found the defendant guilty and assessed substantial damages for the plaintiff. The view that we entertain concerning what should be the ultimate result that should obtain on this appeal, we deem it unnecessary to recite further details of the accident. Likewise we will omit discussing the several errors assigned charging improper rulings of the trial court on the admissibility of evidence. We will advert to the errors assigned pertaining to the instructions read to the jury.

We are of the opinion that the plaintiff did not receive a fair trial as a result of the number and context of the instructions given on behalf of the defendant. The abuses and evils underlying the practice

of trial attorneys in tendering to a court a multitude of involved, confusing and argumentative instructions has been growing and certainly merits some observations by a reviewing court. It is common knowledge that most plaintiff attorneys tender very few instructions. They do so because of their fear of intervention of error. They are desirous that if a judgment is obtained it will be free of error. Plaintiffs ordinarily are not financially able to undergo the burden of prolonged litigation. The converse is true with a majority of those that who are interested in the defense of personal injury cases. It is of little moment to them that an error in the trial procedure may occasion a new trial. Delays, however occasioned, are always one of the best defenses. Too often defense attorneys are prone to tender an excessive number of instructions, repeating the same proposition over and over, not with the honest design of informing the jury of the law, but with the thought of enforcing upon the minds of the jury the importance of their various defenses.

■ Appellee makes the contention that in appellant's motion for new trial she did not specify the objections to the various instructions given on behalf of the defendant, and that such omission was in violation of section 68 of the Civil Practice Act [Ill. Rev. Stat. 1947, ch. 110, par. 192; Jones Ill. Stats. Ann. 104.068], which provides that a party moving for a new trial shall file the points in writing, "particularly specifying the grounds of such motion." The appellant in her motion for new trial stated: "The court erred in giving each of the instructions given at the request of the defendant." Notwithstanding the holding of the court in the case of *Krug v. Armour & Co.*, 335 Ill. App. 222, 80 N. E. (2d) 386, we are of the opinion that there has been a sufficient compliance with section 68 and appellee is entitled to have this assignment of error considered by this court. (*Chicago & St. L. R. Co. v. Mines,* 221 Ill. 448, 456; *Yarber v. Chicago & A. R. Co.,* 235 Ill.

589; *West Chicago St. R. Co. v. Krueger,* 168 Ill. 586; *Chicago City R. Co. v. Smith,* 226 Ill. 178.)

There were forty instructions tendered, twenty-seven of them by defendant. Nineteen of defendant's twenty-seven tendered instructions were given. Eight of plaintiff's tendered thirteen instructions were given.

Of the eight instructions which were given on behalf of the plaintiff, only one instructed the jury to find the defendant guilty. There were two pertaining to damages, and the others were completely innocuous and in no way damaging to the defendant's cause.

We deem it unnecessary to burden this opinion with a complete recital of all of defendant's instructions that were given, but suffice it to mention for the purpose of this opinion that in seven different instances the jury was told in some form that "plaintiff must be free of contributory negligence." Two of these instructions were long and argumentative. Seven times was the jury told that "plaintiff must prove her case by a preponderance of evidence." And fourteen times the jury heard the trial judge say: "You must find the defendant not guilty" or "the plaintiff cannot recover."

Instruction number 20 of defendant read as follows: "You are instructed that it is the duty of the plaintiff to make out her case by a preponderance or a greater weight of the evidence; that is, the plaintiff's evidence must force upon your minds the fact that it is stronger and more to be believed than the evidence on the part of the defendant. If you are unable to say that the evidence on behalf of the plaintiff is of greater weight than the evidence on the part of the defendant, then your verdict must be for the defendant. If the evidence is equally balanced, your verdict must be for the defendant." All that was required of the plaintiff was that she prove her case by a preponderance of evidence. She was not required to force anything upon the minds of the jury. It was error to impose this

additional burden upon the plaintiff. (*Teter v. Spooner,* 305 Ill. 198; *Protection Life Ins. Co. v. Dill,* 91 Ill. 174; *Hurzon v. Schmitz,* 262 Ill. App. 337.) In the latter case there was an instruction which required plaintiff to "establish her case." The court said at page 340: "The instruction placed a higher burden on appellant than the law required. It was very much like telling the jury that the appellant was required to prove the facts stated to the satisfaction of the jury, or beyond a reasonable doubt. Instructions telling a plaintiff to prove his case by a *greater* preponderance of the evidence, to produce evidence to satisfy the jury, or to prove certain facts to the satisfaction of the jury, have frequently been condemned."

Defendant's instruction number 28 was as follows: "The Court instructs the jury, as a matter of law, that the mere happening of the accident in question, together with proof of the exercise of the degree of care by the plaintiff, as defined in these instructions, does not raise a presumption of negligence on the part of the defendant.

"The Court further instructs the Jury that the burden of proof is not upon the defendant, HAROLD THOMPSON, to show that he is not guilty of the specific negligence charged against him in the complaint, but the burden of proof is upon the plaintiff in this case to prove that the defendant was guilty of such negligence as charged in the complaint, and this rule as to the burden of proof is binding in law and must govern the jury in deciding this case. The jury has no right to disregard said rule or adopt any other in lieu thereof, but in weighing the evidence and coming to a verdict the jury should apply said rule and adhere strictly to it."

█ The first part of the above instruction has been often criticized. "In *Cohen v. Weinstein,* 231 Ill. App. 84–101, it was stated: 'It was error to tell the jury that the mere happening of the occurrence in question raised no presumption of negligence. We do not think

that it can be said in the case at bar, as a matter of law, that no presumption of negligence arose from the mere happening of the occurrence. The question was one of fact for the jury. *West Chicago St. R. Co. v. Petters,* 196 Ill. 298, 300; *Hartrich v. Hawes,* 202 Ill. 334, 342, 343; *Pennsylvania Co. v. McCaffrey,* 173 Ill. 169, 175, 176.' '' By the time defendant's instruction number 28 was given, the jury had been told many times that the burden of proof rested on plaintiff to prove the various charges of negligence. The defendant employed the familiar scheme of inserting a new proposition of law in each instruction, reiterating a particular expression in order to have it read again by the court. Counsel for plaintiff and defendant have cited in their briefs many cases wherein the instructions under consideration have been both approved and criticized. Since we are disapproving the instructions given as a group or series, we do not consider it helpful to apply those authorities in determining our problem.

The issues presented in this case were simple and did not require the giving of nineteen instructions to inform the jury of the law applicable thereto. ''The practice of giving an excessive number of instructions has been repeatedly condemned. *Asmossen v. Swift & Co.,* 243 Ill. 93, 98; *City of Salem v. Webster,* 192 Ill. 369, 374; *Adams v. Smith,* 58 Ill. 417, 419; *Wood v. Illinois Cent. R. Co.,* 185 Ill. App. 180, 184; *Kravitz v. Chicago City Ry. Co.,* 174 Ill. App. 182, 186; *Chicago City Ry. Co. v. Sandusky,* 99 Ill. App. 164, 168, 169, 170; *Nelson v. Chicago City Ry. Co.,* 163 Ill. App. 98, 102.''

There could be only one purpose in having the trial court read to the jury seven different times a pronouncement that ''the plaintiff must be free of contributory negligence,'' and that was to unduly prejudice the jury against the plaintiff. The jury could very easily have concluded that the trial judge was making

another argument in behalf of the defendant. It is not unnatural for a jury to have great respect for the wisdom of the trial court. Likewise it is not unreasonable for them to adopt the views that the court apparently entertains. When the court tells them repeatedly that "the plaintiff cannot recover" or that "they must find the defendant not guilty," the jury may believe that the court is of the opinion that the verdict should be for the defendant. No one coming into our courts for redress of wrongs done them should be required to bear the *onus* of this disadvantage.

In view of the foregoing, it is our opinion that plaintiff appellant is entitled to a new trial.

*Judgment reversed and remanded.*